UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6:19-CR-73-CHB-HAI-1 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| RUSSELL JENKINS, | ) | **ORDER ON OBJECTIONS TO** |
| | ) | **MAGISTRATE JUDGE'S** |
| Defendant. | ) | **RECOMMENDED DISPOSITION** |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Russell Jenkins's Objection to the Recommended Disposition of the Motion to Suppress ("Objections") [R. 80] wherein Judge Ingram recommended that the Court deny the Defendant's Motion to Suppress and request for a *Franks* hearing. [R. 79]  The Motion to Suppress [R. 33], along with a Supplemental Brief [R. 38] that Magistrate Judge Ingram ordered Defendant to file [R. 37], sought to exclude all evidence and statements obtained by law enforcement following the execution of a search warrant at his residence on January 3, 2018.  The matter is now ripe for the Court's review.  This Court must make a *de novo* determination of those portions of the Recommended Disposition to which objections are made. 28 U.S.C. § 636(b)(1).  Because the Court agrees with the Magistrate Judge's analysis and because the Defendant's Objections otherwise fail to rebut the reasoning of the Magistrate Judge, the Recommended Disposition will be accepted as the opinion of the Court.

The Recommended Disposition found that there was no basis for suppression of the evidence in question and no grounds for a hearing. [R. 79]  Defendant Russell Jenkins ("Defendant" or "Jenkins") made a series of objections to Judge Ingram's ruling: the search warrant affidavit contains "discrepancies" sufficient to warrant a *Franks* hearing; a hearing should be granted based upon "ambiguity" and omissions in the search warrant affidavit; the search warrant affidavit failed to

1

establish a nexus between any drug activity and Defendant's home; the good faith exception to the exclusionary rule should not apply; and Defendant did not waive (or fail to support) his argument that his statements to law enforcement were involuntary. [R. 80] These Objections are addressed in turn below.[1]

I.     **Objections**

   A.     **Request for a Hearing**

Defendant first objects to Magistrate Judge Ingram's recommendation that his request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) be denied. [R. 80 pp. 3–9] Defendant claims that discrepancies exist between the affidavit in support of a search warrant for his home and the police case report. He argues these discrepancies show that statements made in the affidavit were deliberately false or made with reckless disregard for the truth. [R. 38 pp. 3–5; R. 80 pp. 4–7] The affidavit in question, submitted by Kentucky State Police Detective Benjamine Graves, reads as follows:

> The affiant has information that Russell Jenkins is living at 654 South HWY 1223 in Corbin Kentucky. The affiant has received information that Jenkins is distributing Oxycodone in Laurel County. I have spoken with a source of information that advised Jenkins is obtaining Oxycodone pills from a source of supply in Michigan. The source who[se] information I have found to be reliable from past investigations stated He/She had purchased Oxycodone from Jenkins in the past. I have also conducted two controlled purchases where Oxycodone 30MG pills were purchased from Charles Chadwell. I have information that Chadwell was obtaining Oxycodone pills from Jenkins. During both controlled purchases Chadwell was operating a vehicle owned by Jenkins. **On Jan 3, 201[8] I observed the vehicle that Chadwell was operating when the controlled purchases were conducted setting [sic] in the driveway at 654 South HWY 1223 in Corbin Ky. While conducting surveillance I observed Chadwell on the property of the residence. A short time later I observed Chadwell get into the vehicle and leave the residence.** I had learned from the investigation on Chadwell that he had a suspended license. The Affiant and Tpr Chris Saunders U/930 conducted a traffic stop on the vehicle because Chadwell was operating the vehicle. During the traffic stop Troopers located 96 Oxycodone 30 MG tablets on Chadwells person. **Chadwell advised he obtained the pills from Jenkins that day and confirmed the residence he had come from was Jenkins residence**.

---

[1] The Magistrate Judge ably laid out the relevant facts in the Recommended Disposition. Rather than reviewing all these facts anew, the Court will address the facts only to the extent necessary to rule on Defendant's Objections to the Recommended Disposition.

[R. 40-1 p. 2; R. 79 p. 4] (emphasis added).  The affidavit also includes that Jenkins has a prior 2014 conviction for third-degree drug trafficking. [R. 79 p. 4]  The case report, which Defendant claims shows falsities in the affidavit, states:

> On Jan 3, 2018 I received a phone call from CI 11-351. The CI stated CHARLES CHADWELL AKA CHUCK was currently at RUSSELL JENKINS residence. The CI stated CHUCK was at the residence doing work for JENKINS but would be obtaining Oxycodone pills from JENKINS while he was there. The CI has provided information in the past that CHUCK would obtain 50 Oxycodone 30MG pills per day from JENKINS. The CI said CHUCK normally is at JENKINS residence during the day working for JENKINS and that during this time JENKINS also obtains Oxycodone pills. The CI stated CHUCK was driving the Ford F150 pickup truck that is registered to JENKINS. The CI stated the vehicle was the same one CHUCK was driving during both controlled purchases that I had previously conducted.
>
> Around 15:30 hours on Jan 3, 201[8] I began conducting surveillance in the area of JENKINS residence at 654 south Hwy 1223 in Corbin Kentucky. **During the time I was conducting surveillance I observed the vehicle CHUCK had been driving parked in the driveway at JENKINS residence. I also observed CHUCK cross the street and go over to some parked cars where it appeared that JENKINS was on a tractor. It appeared CHUCK, JENKINS and another male subject were removing an engine from a vehicle. Around 16:00 hours I observed CHUCK and the male subject leave JENKINS residence in the truck CHUCK has driven in the past.**  I observed CHUCK as the operator of the vehicle and had previous knowledge that CHUCK'S operator's license was suspended. I contacted TPR Chris Saunders U/930 to conduct a traffic stop on the vehicle. TPR Saunders was able to stop the vehicle on AG Road. During the traffic stop CHUCK was very nervous and was shaking. I asked CHUCK to step out of the vehicle. **I asked CHUCK where he had come from and he stated JENKINS residence.** I informed CHUCK that I knew he had been obtaining Oxycodone pills from JENKINS and that I had previously conducted multiple controlled purchases from him using a confidential informant. **I asked CHUCK if he was obtaining Oxycodone from JENKINS and he stated yes.** I asked CHUCK if he had any Oxycodone pills on his person or in the vehicle and he stated no and that I could search. I patted Chuck down and located an empty pill bottle in CHUCK'S pocket. The pill bottle was consistent in appearance with the bottle that CHUCK had removed the pills from when he had sold them to the CI when the controlled purchases were conducted. In chuck[']s other pocket I located a knife which I removed and a pack of cigarettes there was a small piece of a plastic baggie that was sticking out of the top of the cigarette pack. During the controlled purchases CHUCK would remove a small plastic bag from the pill bottle and the plastic bag would contain the Oxycodone pills he sold to the CI. When I removed the plastic bag [from] the cigarette pack I located a large amount of round blue pills in the plastic baggie. The pills were marked A 215 which I know through my training and experience to be consistent with the markings of Oxycodone 30MG pills these pills also had the same appearance and markings of the pills CHUCK had sold to the CI during the first controlled purchase.

> **I asked CHUCK where he had obtained the pills I had located on his person. CHUCK stated he had obtained the pills [from] JENKINS that day.**

[R. 40-5 pp. 1–2; R. 79 pp. 4–5] (emphasis added).

Defendant argues that the affidavit's use of the word "residence" reflects (or at least implies) that Chadwell *went inside Jenkins's house*, whereas the case report reflects any transaction or meeting between the two took place outside or across the street from Jenkins's residence. [R. 80 p. 5] Judge Ingram found that a *Franks* hearing was not warranted because there was no contradiction between the case report and the affidavit. [R. 79 pp. 5–7] He found that the statement "I observed Chadwell on the property of the residence. A short time later I observed Chadwell get into the vehicle and leave the residence" did not contradict the case report because it did not say, as Defendant claims, that Chadwell went inside Defendant's house. Defendant also complains that Judge Ingram did not address his argument that failing to include that Chadwell crossed the street to meet Jenkins was a material omission made with reckless disregard for the truth sufficient to warrant a *Franks* hearing. [R. 80 pp. 4–5]

A defendant challenging an affidavit in support of a search warrant bears a heavy burden. Affidavits that support search warrants are entitled to a presumption of validity. *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). To be entitled to a *Franks* hearing, the defendant must "1) make[ ] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) prove[ ] that the false statement or material omission is necessary to the probable cause finding in the affidavit." *Id.* (quoting *United States v. Young*, 847 F.3d 328, 348–49 (6th Cir. 2017)). An officer's statement is made with reckless disregard for the truth only if the defendant can show that the officer

4

"subjectively entertain[ed] serious doubts as to the truth of his [or her] allegations." *Id.* (internal quotations omitted).

When it comes to omissions, a defendant's burden is even higher. "A *Franks* hearing may be merited when facts have been omitted in a warrant application, but only in rare instances." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). The Sixth Circuit has made clear that while omissions are not immune from a *Franks* inquiry, they are "much less likely to merit a *Franks* hearing than are affidavits including allegedly false statements." *Id.* (citing *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)). "When there is a material omission of fact, a *Franks* hearing is granted only if the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause." *United States v. Hampton*, 760 F. App'x 399, 405 (6th Cir. 2019) (citing *Mays*, 134 F.3d at 816)) (emphasis in original). The justification for this heightened standard is well-founded: allowing every omission to warrant a *Franks* hearing would allow every affidavit ever submitted to be questioned. *Mays*, 134 F.3d at 815. Finally, for both false statements and material omissions, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no [*Franks*] hearing is required." *Bateman*, 945 F.3d at 1008 (quoting *Franks*, 438 U.S. at 171–72).

In regard to Defendant's first objection, the Court agrees with Judge Ingram's finding that there was no contradiction between the affidavit and the case report. Defendant claims the affidavit's statement that the affiant saw Chadwell "get into the vehicle and leave the residence" was false, made with reckless disregard for the truth, and material to the finding of probable cause as required by *Franks*. However, when read in context it is clear there is no contradiction between the two. The affidavit reads:

5

> On Jan 3, 201[8] I observed the vehicle that Chadwell was operating when the controlled purchases were conducted setting [sic] in the driveway at 654 South HWY 1223 in Corbin Ky. While conducting surveillance I observed Chadwell *on the property of the residence*. A short time later I observed Chadwell *get into the vehicle and leave the residence*.

[R. 40-1 p. 2 (emphasis added)]  Nowhere does the affidavit state (or imply) that the affiant saw Chadwell *in the house*.  In fact, read in context, it makes clear that Chadwell was not in fact in the house, but rather was "in the driveway" and "on the property of the residence" – that is, near the residence, but outside the house.  The officer's use of the word "residence" is used in a broader context to mean the property surrounding the residence.  The final sentence of the affidavit states "Chadwell advised he obtained the pills from Jenkins that day and confirmed the residence he had come from was Jenkins residence." [*Id.*]  Reading the word "residence" in the final sentence to mean that Chadwell had been inside the house itself ignores the preceding sentences, which clearly indicate the affiant observed Chadwell "on the property of the residence," but *not* in the house itself.

Defendant next argues that the affidavit omitted sufficiently material facts to warrant a *Franks* hearing.  Defendant points to the case report, which includes that:

> During the time I was conducting surveillance I observed the vehicle CHUCK had been driving parked in the driveway at JENKINS residence. I also observed CHUCK cross the street and go over to some parked cars where it appeared that JENKINS was on a tractor. It appeared CHUCK, JENKINS and another male subject were removing an engine from a vehicle. Around 16:00 hours I observed CHUCK and the male subject leave JENKINS residence in the truck CHUCK has driven in the past.

[R. 40-5 p. 1; R. 79 pp. 4–5]  Defendant's chief complaint is that the affidavit did not include the fact that Chadwell (Chuck) at some point crossed the street and interacted with Defendant there. [R. 80 pp. 4–6]  For this omission to warrant a *Franks* hearing Defendant must make a "strong preliminary showing that the affiant ***with an intention to mislead*** excluded critical information from the affidavit, and the omission is ***critical*** to the finding of probable cause." *Hampton*, 760 F. App'x at 405 (emphasis added).  The mere existence of omissions is

6

insufficient to make a strong preliminary showing that the affiant intended to mislead the issuing magistrate. *Hale v. Kart*, 396 F.3d 721, 727 (6th Cir. 2005).

Defendant claims that because Detective Graves included this detail in his case report but not his affidavit, this suffices to show his intent to deceive the magistrate. [R. 80 p. 6] While he does not argue the point specifically, Defendant implies that this omission was critical to the issuing magistrate's probable cause finding. The Court disagrees on both points. First, the fact that the case report and search warrant affidavit are not carbon copies of each other is insufficient to establish a strong showing that Detective Graves made the omissions intending to mislead the issuing magistrate. *See Hale*, 396 F.3d at 727. Though the omission of this relevant fact appears to be a closer call, Defendant has made no "strong preliminary showing" that the affiant intended to mislead by omitting the fact that he observed Chadwell cross the street and talk with Defendant. The affidavit makes no mention whatsoever of Defendant's whereabouts—meaning there was no attempt to mislead the issuing magistrate that *Defendant* was "on the property of the residence." And in any event, even if the warrant had included this fact, as explained in Section I.B, probable cause still existed to support the search of Defendant's home. *See Bateman*, 945 F.3d at 1008 (quoting *Franks*, 438 U.S. at 171–72) (holding that if, even setting aside allegedly false statements, probable cause remains, there is no need for a *Franks* hearing).

Defendant next objects to Judge Ingram's denial of a hearing due to the supposed "ambiguity" in the affidavit. [R. 38 p. 5; R. 80 pp. 6–7] He argues that a hearing should be granted because the Sixth Circuit has endorsed hearings when there are contested issues of fact that bear on the legality of a search. [R. 80] In his supplemental motion, Defendant argued that "a hearing may provide additional context as to Graves's generalized assertions about Mr. Chadwell's activities in relation to Jenkins's residence." [R. 38 p. 5] However,

"[w]hen determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (internal quotations omitted).  In his Objections, Defendant cites *United States v. Prince*, 57 F.3d 1071 (6th Cir. 1995) (Table) for the proposition that district courts have the authority to conduct hearings if they find a warrant "fatally defective" because they lack specificity.  The fact that a Court has the authority to grant a hearing does not mean one is necessary.  As the affidavit must stand on its own merit, a hearing cannot resolve any claimed ambiguities that it contains.

        **B.**        **Sufficiency of the Affidavit for Search Warrant**

Defendant objects to Magistrate Judge Ingram's conclusion that the search warrant affidavit provided a sufficient nexus between his home and the criminal activity described in the affidavit.  The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (internal quotations omitted).  "When determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *Id.* (internal quotations omitted).  The Court must "look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019).  After-the-fact scrutiny of an affidavit should not take the form of *de novo* review, rather, the Court must give the determination of the magistrate who issued the warrant "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th

Cir. 2000). The question is merely whether the magistrate had a "substantial basis" for finding that the underlying affidavit provided probable cause. *Id.*

To find probable cause to justify a search warrant, there must be a nexus between the place to be searched and the evidence sought. *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). A search for illegal drugs only needs to show "'a fair probability' that the drugs will be found in a particular place." *Abernathy*, 843 F.3d at 249; *see also United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) ("Probable cause exists where there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.").

The Sixth Circuit has outlined an important inference that reviewing courts may consider in analyzing the nexus requirement in cases involving known drug dealers:

> [The] general [nexus] rule is refined when the place is a home and the evidence drugs. "[I]n the case of drug dealers," we have observed, "evidence is likely to be found where the dealers live." *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (citation, internal quotations, and alteration omitted). And so a court issuing a search warrant "may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008).

*United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019); *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018). However, "the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *McCoy*, 905 F.3d at 416–17 (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)); *see also United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009). To rely on the inference that a drug dealer's residence may contain contraband, "the warrant application must connect the drug-dealing activity and the residence." *McCoy,* 905 F.3d at 417. This connection typically must be made with "facts showing that the residence has been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence" *see United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016), or "observation of drug activity near defendant's home," *see Berry*, 565 F.3d at 339.

9

The Sixth Circuit has stretched the "drug dealer" inference outlined in *Williams* and *Crawford* even farther in cases involving ongoing criminal activity. Evidence that a defendant is a drug dealer with continual and ongoing operations can, in some cases, provide probable cause to search the defendant's home, even if there is no direct evidence that the defendant is dealing drugs out of the home itself. *See United States v. Newton*, 389 F.3d 631, 636 (6th Cir. 2004), *vacated on other grounds*, 546 U.S. 803 (2005); *United States v. Bethal*, 245 F. App'x 460, 467 (6th Cir. 2007) (explaining that evidence that a defendant is a drug dealer with 'continual and ongoing operations' in and of itself creates probable cause to search the home); *see also United States v. McCoy*, 905 F.3d 409, 417–18 (6th Cir. 2018) (quoting *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009); *United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002)). In such cases, "the lack of a direct known link between the criminal activity and [the dealer's] residence, becomes minimal." *Newton*, 389 F.3d at 635–36.

The affidavit in this case provides sufficient evidence not only that Jenkins was a drug dealer, but also that his drug operations were "ongoing and continual." Although the ongoing-operations cases provide additional support for the finding of probable cause in this case, it is not necessary for the Court to rely on this theory because the affidavit, as explained below, also contains sufficient facts that such activities occurred "in or around [his] residence," *see Brown*, 828 F.3d at 383, or "near defendant's home." *Berry*, 565 F.3d at 339. That is, in this case, there was evidence of defendant's on-going drug activities, *plus* a sufficient nexus to his residence.

A confidential informant (with a history of reliability per Detective Graves)[2] told Detective Graves that Defendant was distributing oxycodone, that Defendant had a supplier in Michigan, and

---

[2] To evaluate information provided by a confidential source, the Court should "consider the source's reliability, veracity, and basis of knowledge." *United States v. Jones*, 707 F. App'x 317, 319 (6th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). Reliability can be established in a number of ways, including through corroboration of the informant's story, details regarding the informant's reliability in the past, or other indicia of the informant's reliability—such as the willingness of the informant to reveal their name or a sufficiently detailed description of the informant's first-hand observations. *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir.

10

that the informant had purchased oxycodone from Defendant.[3] [R. 40-1 p. 2] Graves conducted two controlled purchases from Chadwell, who drove a vehicle owned by Jenkins during both controlled purchases. Graves had "information" that Defendant was Chadwell's supplier. [*Id.*] On January 3, 2018, Detective Graves corroborated this information when he surveilled Defendant's residence. He observed Defendant's vehicle parked in the driveway (the same vehicle Chadwell drove during the controlled buys). He saw Chadwell "in the driveway" and "on the property of [Defendant's] residence." [*Id.*] He then observed Chadwell leave the residence driving Jenkins's vehicle. Detective Graves and other officers pulled Chadwell over and found 96 oxycodone tablets. Chadwell told the officers "he obtained the pills from Jenkins that day and confirmed the residence he had come from was Jenkins['s] residence." [*Id.*] Finally, the affidavit detailed that Defendant has a prior 2014 conviction for trafficking controlled substances. [*Id.*] These facts provide sufficient evidence that Jenkins was a drug dealer, that his operations were ongoing, that he was Chadwell's supplier, and that drug activities had just occurred "near [Jenkins's] home" sufficient to support a reasonable inference that drugs would be stored at his residence. *Berry*, 565 F.3d at 339.

Defendant argues that Magistrate Judge Ingram erred in concluding this evidence indicated he was a drug dealer with ongoing operations, and erred in inferring, pursuant to the *Williams/Crawford* line of precedent, that there was a fair probability that drugs would be found at his house. [R. 80 pp. 10–17] Defendant argues nothing in the affidavit tied any alleged drug activity

---

2005); *see also United States v. Allen*, 211 F.3d 970, 975–76 (6th Cir. 2000). Moreover, a statement against penal interest is a "significant, and sometimes conclusive, reason for crediting the statements of an informant." *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009). Here, the informant admitted to purchasing oxycodone from Jenkins, which implicated the informant in an illegal drug transaction. Detective Graves's affidavit also provided that the informant was reliable in past investigations. The informant's information was also corroborated by Detective Graves's surveillance of Chadwell and Jenkins, the traffic stop of Chadwell, and Chadwell's admissions to Graves. In sum, this is sufficient to establish the reliability of the informant.

[3] Defendant makes a throwaway reference to the staleness of these statements. As these arguments were not presented to the Magistrate Judge, Defendant cannot raise new arguments in his objections. *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir.1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")); *see also Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988); *Anna Ready Mix, Inc. v. N.E. Pierson Constr. Co., Inc.*, 747 F. Supp. 1299, 1302–03 (S.D. Ill. 1990).

11

to his home, so the nexus was not sufficiently strong. Defendant further argues that the fact that Chadwell crossed the street to interact with him (a material fact left out of the affidavit, he argues) establishes that he was not using his house to store drugs, further undermining any nexus to his home. [R. 80 pp. 13–14]

The affidavit need only establish a "fair probability" that drugs are stored in Defendant's residence. *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016). The Sixth Circuit made clear that "status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home." *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009); *see also United States v. Crawford,* 943 F.3d 297, 308–09 (6th Cir. 2019). In *Berry* and *Crawford* the Sixth Circuit found a sufficient nexus even though officers did not observe an actual drug transaction at the residences. In *Berry*, the challenged affidavit stated that the defendant had a prior conviction for drug trafficking, was paying rent in cash under a false alias, and was found with drugs in his car parked in the driveway of his residence. *Berry*, 565 F.3d at 339. In *Crawford*, a confidential informant told police that Crawford kept his supply of cocaine in a duffle bag. *Crawford*, 943 F.3d at 303. The informant made a controlled buy from Crawford at a local gym, where the informant put the buy money in the duffle bag, removed the cocaine from the bag and handed the bag back to the defendant. *Id.* The officers observed Crawford leaving his apartment carrying a duffle bag just before the controlled buy. *Id*. at 309.

As in *Berry* and *Crawford*, though no drug deals were actually observed at defendant's residence, the affidavit established that Defendant's ongoing drug activities were occurring "near defendant's home." *Berry*, 565 F.3d at 339. Right after observing Chadwell "on the property of [Jenkins's] residence," officers observed him "get into [Jenkins's] vehicle and leave the residence." [R. 40-1 p. 2] This was the same vehicle Chadwell drove during two controlled buys. The officers effected a fruitful traffic stop and found 96 oxycodone pills on Chadwell, who stated he got the pills from Jenkins "that day" and had just left Jenkins's residence. These facts establish a sufficient nexus

12

between Jenkins's (and Chadwell's) drug activities and the residence, and also substantiate the information officers had previously received from the confidential informant and otherwise—that Jenkins was distributing oxycodone, that he had sold pills to the informant in the past, and that he was Chadwell's supplier.  The informant had a history of reliability per Detective Graves, and indeed proved reliable in this investigation.  And although the affidavit omitted the relevant fact that Chadwell crossed the road to interact with Jenkins that day, there was nevertheless a sufficient nexus to the residence.  That is, even if the affidavit had included the omitted fact that Chadwell crossed the street to engage Jenkins, the nexus to defendant's residence was nevertheless sufficient to establish probable cause.  Looking "holistically" at the affidavit and employing "a healthy dose of common sense," the facts in the affidavit (even with the omitted information), and the reasonable inferences permissibly drawn from those facts, provide a "fair probability" that drugs would be found in Defendant's home. *See United States v. White,* 874 F.3d 490, 496 (6th Cir. 2017); *Berry*, 565 F.3d at 339.

      Finally, Defendant argues that Judge Ingram erred in distinguishing the Sixth Circuit decisions in *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009) and *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016).  However, neither *Higgins* nor *Brown* are persuasive.  In *Higgins*, the affidavit was based entirely on an informant's uncorroborated statements.  Police made a traffic stop and discovered cocaine.  The driver (the informant) stated that he had picked up the cocaine from the defendant's (Higgins) residence, but the affidavit did not attest to his reliability, and police did not corroborate the information. *Higgins*, 557 F.3d at 385.  Unlike *Higgins*, the confidential informant in this case, who established Jenkins as a supplier of oxycodone, had a history of providing reliable information to law enforcement.  Further, he was proven reliable in this case, and his information was corroborated, based on Detective Graves' surveillance and the fruitful traffic stop of Chadwell.  [R. 40-1 p. 2]  Detective Graves observed Chadwell on Jenkins's property and watched him drive

13

away from Jenkins's residence in Jenkins's vehicle. Shortly after that, he and other officers stopped Chadwell and found 96 oxycodone pills on him (which Chadwell admitted he had obtained from Jenkins that day). These facts are a far cry from the uncorroborated informant statements that troubled the *Higgins* court. *See United States v. Coleman*, 923 F.3d 450, 458 (6th Cir. 2019) (distinguishing *Higgins* because of the unreliability of the tipster).[4]

In *Brown*, law enforcement sought a search warrant for the defendant's home after his car, parked outside a *co-defendant's* home, tested positively for narcotics during a canine search. *Brown*, 828 F.3d at 382–83. There was also evidence that the defendant was a drug dealer. *Id.* at 379–80. The Sixth Circuit found that these facts did not provide a fair probability that drugs would be found in Brown's home, because there was no connection to his home whatsoever, or evidence that any "suspicious activity" had taken place there. *Id.* This case is not like *Brown* either. Here, Chadwell was pulled over shortly after Detective Graves watched him leave Jenkins's property driving Jenkins's truck. Officers found 96 oxycodone pills on his person, and he admitted he obtained the pills from Jenkins that day, having just come from Jenkins's residence. [R. 40-1 p. 2] Unlike *Brown*, these facts, coupled with the corroborated information from the reliable informant that Jenkins was dealing in oxycodone, establish a fair probability that drugs would be found in Jenkins's home.

### C.     Good Faith Exception

Defendant next objects to Magistrate Judge Ingram's recommendation that even if the warrant did not establish probable cause, the good faith exception would still save the search from the exclusionary rule. [R. 80 pp. 17–18] Defendant's objection rests solely on Judge Ingram's recommendation to not hold a *Franks* hearing. [*Id.*] He argues that if a hearing were held and the

---

[4] For more cases distinguishing *Higgins* based on the unreliability of the informant in that case, see *United States v. Raglin*, 663 F. App'x 409, 412 (6th Cir. 2016); *United States v. Gill*, 685 F.3d 606, 610 (6th Cir. 2012); *United States v. Sneed*, 385 F. App'x 551, 558 (6th Cir. 2010). For cases citing Higgins specifically for purposes of analyzing the reliability of an informant, see *United States v. Stone*, 676 F. App'x 469, 474 (6th Cir. 2017); *United States v. Neal*, 577 F. App'x 434, 442 (6th Cir. 2014).

Court determines that Detective Graves made false statements or critical material omissions, such misconduct would disqualify the search from the good faith exception. [*Id.*] However, as previously discussed, no *Franks* hearing is warranted in this case.

The purpose of the exclusionary rule is to deter police misconduct rather than punish the errors of magistrates. *United States v. Leon*, 468 U.S. 897, 916 (1984). As the costs of exclusion are high, it is only an appropriate remedy when the deterrence benefits outweigh those costs. *Davis v. United States*, 564 U.S. 229, 238 (2011). This occurs when police exhibit "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Id.* (internal quotations omitted). The good faith exception to the exclusionary rule does not bar from admission evidence seized in a "reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (quoting *Leon*, 468 U.S. at 905). In determining whether the *Leon* good faith exception to the exclusionary rule applies, the Court must determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. For an officer's reliance to be reasonable, the affidavit must provide "a minimally sufficient nexus between the illegal activity and the place searched." *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 596); *see also United States v. White*, 874 F.3d 490, 496–97 (6th Cir. 2017) (there need only be "*some* connection, regardless of how remote it may have been," or "some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched" for an officer's reliance on the warrant to be reasonable) (emphasis in original) (internal quotes omitted).

The Court previously detailed the permissible inferences allowed when considering affidavits involving known drug dealers (and those with ongoing and continuing criminal activity) sufficient to establish probable cause and a nexus to the defendant's residence. *See supra* Section I.B. When considering the good faith exception, the courts have noted that "reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as

15

objectively reasonable." *United States v. McCoy*, 905 F.3d 409, 420 (6th Cir. 2018) (quoting *White*, 874 F.3d at 500). Even if the affidavit here was not sufficient to support a probable cause inference that oxycodone would be found at Jenkins's residence, it certainly provided a "minimally sufficient nexus" between his ongoing drug activities and his residence, such that the Court cannot fault law enforcement for relying on the affidavit. *McCoy*, 905 F.3d at 419; *see also United States v. Higgins*, 557 F.3d 381, 391 (6th Cir. 2009).

        **D.**        **Suppression of Defendant's Statements**

Defendant's final objections center on Judge Ingram's determination that Defendant could not raise new arguments in his reply brief, and even if he could his remaining arguments were unsupported. [R. 80 pp. 18–20]  In his original Motion [R. 33], Defendant argued that "all evidence and statements" obtained following the search of his residence should be suppressed. [R. 33 p. 1] The only argument in Defendant's original Motion [R. 33] and in his Supplemental Brief [R. 38] for why any statements he made during or after the search should be suppressed was under the fruit of the poisonous tree doctrine. [R. 33 p. 2]  Then, in his reply brief, Defendant argued for the first time that his statements should be suppressed because given the circumstances his statements were not voluntary. [R. 70 p. 9–11]  Defendant also made a general reference to the possibility that he was not properly Mirandized. [*Id.* p. 11]

Judge Ingram first determined that since the search was proper, the fruit of the poisonous tree doctrine was inapplicable.  The Court agrees.  Judge Ingram then concluded that Defendant had waived the remaining arguments.  Defendant gave no explanation whatsoever as to how any statements Defendant made were in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  Finally, Judge Ingram also found that Defendant had not provided any facts as to how his statements were involuntary in violation of his due process rights.

Defendant objects to Judge Ingram's determination that he had waived his due process argument (that statements he made to law enforcement were not voluntary) by not raising it until his

16

reply brief.[5] [R. 80 pp. 19–20] Defendant argues that he properly preserved "all aspects" of his argument that his statements should be suppressed, and effectively argues that his failure to develop an argument based on the voluntariness of his statements should be excused because there was no hearing, so "the record was not sufficiently developed to permit more detailed argument." [*Id.*] Despite being given two opportunities to brief his Motion to Suppress, the only argument Defendant made for why all statements should be suppressed was a one sentence reference to the fruit of the poisonous tree doctrine. [R. 33 p. 2] To argue that this was sufficient to preserve his due process argument that his statements were not voluntary strains credulity. *See Bennett v. Bascom*, 788 F. App'x 318, 323 (6th Cir. 2019) (arguments raised for the first time in reply briefs are forfeited); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *United States v. Prado*, No: 3:16-cr-00099-RGJ-01, 2018 WL 5410967, at *4–5 (W.D. Ky. Oct. 29, 2018).

Even if Defendant did not waive his due process argument, he has failed to support it with any facts at all. As Judge Ingram noted, the only arguments Defendant made in his reply brief was that because Detective Graves told Defendant that he "needed to speak to him," and asked him incriminating questions during the search of his home, Defendant's will was so "overborne" that his statements could not be considered voluntary. Defendant's objection to this finding seems to be based on the idea that he is not required to support his arguments before an evidentiary hearing is held. [R. 80 pp. 19–20] Defendant still has not properly supported his untimely argument. In fact, Defendant has not given the Court enough facts to support any claim that his statements made to law enforcement were involuntary beyond his earlier argument that the search itself was unlawful. *See* [R. 80 p. 20 ("Given the circumstances of the search and interrogation, this issue is inextricably intertwined with the search warrant analysis")] This is merely a re-hash of Defendant's fruit of the

---

[5] Defendant has not objected to Judge Ingram's determination that he waived any challenge under *Miranda*. Nonetheless, the Court agrees with Judge Ingram's analysis: not only did Defendant waive this argument by failing to raise it until his reply brief, but Defendant also failed to develop any argument regarding his *Miranda* rights at all.

17

poisonous tree argument, which is meritless given that the search was supported by probable cause. Therefore, Defendant's objection is meritless. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The **Recommended Disposition [R. 79]** is **ADOPTED** and is entered as the findings and conclusions of the Court.

2. Defendant Russell Jenkins's **Objection to the Recommended Disposition of the Motion to Suppress [R. 80]** is **OVERRULED**.

3. The Defendant's **Motion to Suppress [R. 33]** is **DENIED**.

This the 21st day of April, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY